1   SANYA SHAHRASBI (DC Bar # 1671001)
    sshahrasbi@ftc.gov
2   BRIAN BERGGREN (CA Bar # 279279)
    bberggren@ftc.gov
3   Federal Trade Commission
    600 Pennsylvania Avenue NW
4   Mail Stop CC-6316
    Washington, DC 20580
5   Telephone: (202) 326-2709 (Shahrasbi)
                (202) 326-3229 (Berggren)
6
7   *Attorneys for Plaintiff Federal Trade Commission*

8   KRISTIN K. MAYES
    ATTORNEY GENERAL
    (Firm STATE Bar No. 14000)
9   ALYSE MEISLIK (Bar No. 024052)
    HEATHER HAMEL (Bar No. 031734)
10  MITCHELL ALLEE (Bar No. 031815)
    Assistant Attorneys General
11  Office of the Attorney General
    2005 North Central Avenue
12  Phoenix, AZ 85004
    Telephone: (602) 542-3725
13  Facsimile: (602) 542-4377
    Alyse.Meislik@azag.gov
14  consumer@azag.gov

15  *Attorneys for Plaintiff State of Arizona*

16                UNITED STATES DISTRICT COURT

17              FOR THE DISTRICT OF ARIZONA

18  Federal Trade Commission, and           Case No. _____

19  State of Arizona, *ex rel.* Kristin K. Mayes,
    Attorney General,                        **COMPLAINT FOR PERMANENT
20                                           INJUNCTION, MONETARY
                                             JUDGMENT, CIVIL PENALTY
21                    Plaintiffs,            JUDGMENT, AND OTHER RELIEF**
              v.
22
23  Coulter Motor Company, LLC, a limited
    liability company, also d/b/a as Coulter
24  Tempe, LP, also d/b/a as Coulter Cadillac
    Tempe, also d/b/a as Tempe Buick GMC,
25  and
26  Gregory Depaola, an individual,
27                    Defendants.
28

                         COMPLAINT

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of Arizona, *ex rel.* Kristin K. Mayes, Attorney General, for their Complaint allege:

1.  The FTC brings this action for Defendants' violations of Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§1691-1691f.  For these violations, the FTC seeks relief, including a permanent injunction, monetary relief, and other relief, pursuant to Sections 13(b), and 19 of the FTC Act, and ECOA and its implementing Regulation B, 12 C.F.R. § 202.

2.  The State of Arizona, *ex rel.* Kristin K. Mayes, Attorney General, brings this action pursuant to the Arizona Consumer Fraud Act ("ACFA"), Arizona Revised Statutes ("A.R.S.") §§ 44-1521 to 44-1534, to obtain permanent injunctions, civil penalties, restitution, and other equitable relief, and reimbursement of costs and attorneys' fees for Defendants' acts or practices.

## <u>SUMMARY OF THE CASE</u>

3.  Defendants lure consumers into their automobile dealerships with low advertised prices for new and used vehicles.  Defendants' actual prices often are thousands of dollars higher than advertised, due to a surprise "market adjustment" on the vehicle and other bogus fees and charges.  In many instances, Defendants charge consumers for add-on items ("add-ons") the consumers have not authorized, Defendants tell consumers that such add-ons are required, or charge consumers twice for the same add-ons.  Defendants also charge higher interest rates and greater add-on costs to Latino consumers as compared to non-Latino White consumers.

## <u>JURISDICTION AND VENUE</u>

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

5.  This Court has supplemental jurisdiction over the State of Arizona's claims pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), (c)(1), (c)(2), 1395(a), and 15 U.S.C. § 53(b).

**PLAINTIFFS**

7.    The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the ECOA, 15 U.S.C. §§ 1691-1691f, which, *inter alia*, prohibits discrimination on the basis of race, color, or national origin in credit transactions.

8.    The State of Arizona is authorized to bring this action pursuant to the ACFA, A.R.S. §§ 44-1521 to 44-1534, to obtain injunctive relief to permanently enjoin and prevent the unlawful acts and practices alleged in this Complaint, and to obtain other relief, including restitution, disgorgement of profits, gains, gross receipts, or other benefits, civil penalties, and costs and attorneys' fees.

**DEFENDANTS**

9.    Defendant Coulter Motor Company, LLC ("Coulter"), also doing business as Coulter Tempe, LP, Coulter Cadillac Tempe, and Tempe Buick GMC, is an Arizona corporation with its principal place of business at 7780 S Autoplex Loop, Tempe, Arizona 85284.  Coulter operates the Coulter Cadillac Tempe and Tempe Buick GMC motor vehicle dealerships.  Coulter transacts or has transacted business in this District and throughout the United States.  At all times relevant to this Complaint, acting alone or in concert with others, Coulter has advertised, marketed, distributed, or sold automobiles to consumers throughout the United States.

10.    Defendant Gregory Depaola was the General Manager of both Coulter Tempe dealerships.  At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Coulter, including the acts and practices described in this Complaint.  As General Manager, he had control and responsibility over day-to-day operations at the Coulter Cadillac Tempe and Tempe Buick GMC

1  dealerships, including the implementation of financing and sales policies and the sale of

2  add-ons.  Defendant Depaola also received complaints from consumers about the alleged

3  practices in the complaint, as well as updates from employees at Defendants' dealerships

4  regarding persistent bait-and-switch advertising tactics and hidden add-on charges.

5  Defendant Depaola, in connection with the matters alleged herein, transacts or has

6  transacted business in this District.

7                                          **COMMERCE**

8          11.    At all times relevant to this Complaint, Defendants have maintained a

9  substantial course of trade in or affecting commerce, as "commerce" is defined in

10 Section 4 of the FTC Act, 15 U.S.C. § 44.

11                          **DEFENDANTS' BUSINESS ACTIVITIES**

12         12.    Defendants lure consumers to their dealerships with advertisements of low

13 but illusory vehicle prices and then tack on charges for unauthorized and unwanted add-

14 ons.  This is especially true when it comes to Latino consumers, who Defendants

15 discriminatorily charge more in financing costs and for add-ons than similarly situated

16 non-Latino White consumers.

17                  *Defendants' Advertisements Misrepresent Vehicle Prices*

18         13.    Defendants' advertisements on both their own websites

19 (www.coultertempe.com and www.coultercadillactempe.com) and third-party websites

20 prominently display new and used vehicles available for purchase or lease.  In these

21 advertisements, Defendants expressly and prominently display a specific make and

22 model vehicle and the price at which it is available, which Defendants prominently refer

23 to as the "Coulter Price."

24

25

26

27

28

14.     On their websites, Defendants list the "Coulter Price" of a vehicle, sometimes comparing it to a higher Manufacturer Suggested Retail Price ("MSRP"). For example, some of Defendants' advertisements have displayed the MSRP with a line through it, and discounts called "Coulter Cash" or "Purchase Allowance," which purport to lower the price from the MSRP by thousands of dollars to the so-called "Coulter Price."  Such advertisements also affirmatively state the "Coulter Savings" amount resulting from these discounts.  An example is pictured below:



15.     Defendants also place advertisements on third-party websites that tout prices typically below or at the MSRP for new vehicles, or "below market" for used vehicles.  An example is pictured below, showing a price of $24,656, nearly five thousand dollars below the MSRP:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   16.   Based on Defendants' ads, many consumers believe that Defendants will

16 sell or lease them a vehicle for the advertised price.  But Defendants misrepresent the

17 price of their vehicles.  In numerous instances, Defendants charge consumers hundreds

18 or thousands of dollars more than the advertised price, including for a previously

19 unmentioned and contrived "market adjustment," purportedly for preinstalled add-ons,

20 and miscellaneous fees.

21   17.   In many instances, consumers only learn of the true prices, if at all, after

22 spending considerable time visiting one of Defendants' dealerships and beginning the

23 purchase process.  Defendants' advertisements on third-party websites do not mention

24 the additional charges.  And Defendants obscure any reference to these charges on their

25 websites at the bottom of the page, only visible if consumers scroll, or behind small gray

26 hyperlinks appended to its advertisements.  Even if a consumer were to find this

27 information, it does not indicate whether the listed charges are part of, or in addition to,

28 the advertised price.

1      18.    As Defendants are well aware, many consumers report being misled about

2  the advertised price of the vehicle.  For example, after test-driving a vehicle at Tempe

3  Buick GMC, one consumer emailed the dealer asking why the vehicle they wanted to

4  buy was not available for the advertised price on Coulter's website (which was

5  consistent with the "out the door" price quoted to the consumer during the test drive),

6  and instead included thousands of dollars in additional dealer charges and add-ons.

7  Another consumer complained that Defendants increased the price of the vehicle about

8  $4,000 over MSRP, claiming there was a market shortage, and a $5,000 add-on charge

9  that the dealership refused to remove.

10      19.    Another consumer reached out to a Coulter dealership asking why the price

11  Defendants advertised online and displayed on the window of a vehicle was $8,000 less

12  than the price quoted to the consumer at the dealership.  A Coulter sales manager

13  admitted: "If we don't advertise the lowest price on line [*sic*] people blow past your add

14  [*sic*]…We held back as long as we could and tried doing it differently but with the

15  manufactures [*sic*] breathing down our necks and customers coming in at the advertised

16  price and offering 3,000 less than the advertised price something had to give."

17             ***Defendants' Unfair and Deceptive Add-on Practices***

18      20.    In addition to misrepresenting the price of vehicles, Defendants further

19  inflate the ultimate cost of the vehicles to consumers by deceptively and unfairly tacking

20  on charges for add-ons.  These add-ons include items such as theft protection, paint

21  coating, window tint, Vehicle Identification Number ("VIN") etching, or nitrogen tires,

22  which in the aggregate can cost several hundred dollars to several thousand dollars,

23  substantially increasing the cost of a vehicle.  In many instances, Defendants charge

24  consumers for add-ons they have not agreed to purchase, falsely claim that add-ons are

25  required, and charge consumers twice for the same add-on.

26      21.    Consumers often do not agree to purchase the add-ons Defendants charge

27  them for.  After spending hours selecting a vehicle, negotiating the price, discussing

28  financing terms, and reviewing complex documents, many consumers are not even

1   aware of the add-on charges, which Defendants often bury in a mountain of paperwork

2   and roll into the financing for the vehicle, and appear in many deals.  VIN etching, for

3   example, appears in over 81% of Defendants' deals.  One tactic Defendants use is

4   getting a consumer to agree to a monthly payment that exceeds what they need to pay

5   under the contract to purchase a vehicle, and then "packing" the payment with unwanted

6   add-ons to make up the difference between the inflated offer and the lower payment.  In

7   other instances, Defendants charge consumers twice for certain add-ons: for example,

8   charging consumers $299 for VIN etching, in addition to a $696 charge for the Coulter

9   Value Package, which includes VIN etching.  And in others, Defendants' representatives

10  falsely tell consumers the add-ons are included in the price of the vehicle.

11          22.     If consumers notice and ask about the add-on charges, Defendants often

12  falsely claim they are required.  According to consumers, Defendants' sales

13  representatives have told them, for example, that Lojack theft protection and the Coulter

14  Value Package are required to purchase a vehicle.  But add-ons are not required to

15  purchase, lease, or obtain financing for a vehicle.  Neither the finance companies nor the

16  third-party add-on providers require that add-ons be sold.  And Defendants charge some

17  consumers for these add-ons, but not others, demonstrating that the add-ons are not

18  required.

19          23.     According to a survey of Coulter customers, 92% of them were charged for

20  an add-on without authorization or because they thought it was required.

21          24.     Many consumers do not notice the add-on charges at all.  Some consumers

22  notice them after they complete the transaction and leave the dealership.  For example,

23  one consumer reported discovering after the purchase that the contract included a charge

24  for a warranty that Defendants never discussed with the consumer.

25          25.     When consumers have contacted Defendants to ask what the charges are

26  for or complain about the charges, Defendants further mislead them.  For example, after

27  a vehicle purchase, one consumer asked Defendants for a breakdown of the charges in

28  his contract, which consisted of charges for tint, nitrogen tires, VIN etching, and the

1  Coulter Value Package.  He received only a response from Coulter management that the

2  Coulter Value Package charge was "labeled in error" as it should have been called the

3  "Coulter Prep Fee" that they charge "on all used cars when they go through the shop."

4  The consumer responded that the Coulter Value Package "line item, as written, leads

5  [me] to believe I would be getting something in return.  In this case, the Coulter Value

6  Package, which at this point seems to have zero value."

7       26.    Other consumers report that they discovered additional charges after

8  leaving the dealership, despite having told Defendants they did not want the add-ons.

9  For example, Defendants charged one consumer a higher interest rate than they agreed

10  to, as well as for several add-ons (Lojack, window tint, and VIN etching) the consumer

11  declined.

12                  ***Defendants' Discriminatory Financing Practices***

13       27.    Defendants arrange financing through third-party financing entities for

14  consumers to purchase or lease vehicles and to pay for add-ons.  But Defendants arrange

15  financing with higher interest rate markups and costlier add-ons for Latino consumers

16  than for non-Latino White consumers.  Worse, Defendants charge Latino consumers

17  more for add-ons they almost never knew about or authorized in the first place.  On

18  average, Latino consumers who shop at Coulter pay nearly $1200 more in interest and

19  add-on charges than their non-Latino White counterparts.

20       28.    Each financing entity gives Defendants a specific "buy rate," a risk-based

21  finance charge that reflects the interest rate at which the entity will finance a retail

22  installment contract from the dealer.  Some financing entities permit Defendants to add a

23  finance charge to the buy rate called a "markup."  Unlike the buy rate, the markup is not

24  based on the underwriting risk or credit characteristics of the applicant, but instead is

25  pure profit for Defendants.  Moreover, Defendants compensate employees with a

26  percentage of the markup, incentivizing them to add markup to consumers' financing.

27  Defendants communicate to the consumer only the final total contract rate, which equals

28  the buy rate plus the markup.

29.     Since at least April 2019, Defendants have charged Latino consumers more in interest rate markups than non-Latino consumers, resulting in Latino consumers paying, on average, hundreds of dollars or more in financing costs than similarly situated non-Latino White consumers.  In addition to the higher interest rate markups, Defendants have charged Latino consumers for a greater number of add-ons than non-Latino White consumers, and have charged Latino consumers, on average, roughly $800 more in add-on costs than similarly situated non-Latino White consumers.  These disparities are statistically significant even when accounting for other factors that could affect the interest rate markups and cost of add-ons.

30.     Latino consumers do not know they are being charged higher interest rate markups or more in add-on costs than other similarly situated borrowers.  And charging Latino consumers higher interest rate markups and more in add-on costs does not provide countervailing benefits to consumers or competition.

31.     No legitimate, nondiscriminatory reasons exist for Defendants charging Latino consumers higher interest rate markups and more in add-on costs than to similarly situated non-Latino White consumers.

32.     Moreover, Defendants' policy and practice is to give their employees unfettered discretion to add interest rate markup to financing rates for consumers and include and set the price for add-ons in credit transactions, leading to statistically significant disparities.  This practice is not justified by a business necessity that could not be met by a less discriminatory alternative.

*      *      *

33.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

34.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

1   35.   Misrepresentations or deceptive omissions of material fact constitute

2   deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

3   36.   Acts or practices are unfair under Section 5 of the FTC Act if they cause or

4   are likely to cause substantial injury to consumers that consumers cannot reasonably

5   avoid themselves and that is not outweighed by countervailing benefits to consumers or

6   competition.  15 U.S.C. § 45(n).

7   **COUNT I**

8   **Misrepresentations Regarding Advertised Prices**

9   **(By Plaintiff FTC Against All Defendants)**

10   37.   In numerous instances in connection with the advertising, marketing,

11   promotion, offering for sale, or sale or financing of motor vehicles, Defendants

12   represent, directly or indirectly, expressly or by implication, that Defendants will sell

13   particular vehicles at specific prices.

14   38.   In truth and in fact, in numerous instances in which Defendants make the

15   representations set forth in Paragraph 37, Defendants do not sell the vehicles at those

16   prices.

17   39.   Therefore, Defendants' representations as set forth in Paragraph 37 are

18   false or misleading and constitute deceptive acts or practices in violation of Section 5(a)

19   of the FTC Act, 15 U.S.C. § 45(a).

20   **COUNT II**

21   **Misrepresentations About Charges**

22   **(By Plaintiff FTC Against All Defendants)**

23   40.   In numerous instances in connection with the advertising, marketing,

24   promotion, offering for sale, or sale or financing, or leasing of motor vehicles,

25   Defendants represent, directly or indirectly, expressly or by implication, that:

26   (a) consumers are required to pay particular fees or purchase add-ons to

27   purchase, lease, or finance vehicles;

28

(b) consumers have authorized charges in their vehicle sales or lease

contracts, including for add-ons, total cost, and financing; or

(c) consumers will not be charged for add-ons.

41.    In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 40:

(a) consumers are not required to pay particular fees or purchase add-ons;

(b) consumers have not authorized the charges in their vehicle sales or

lease contracts; or

(c) consumers are charged for add-ons.

42.    Therefore, Defendants' representations as set forth in Paragraph 40 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### Unfairly Charging Consumers Without Consent

### (By Plaintiff FTC Against All Defendants)

43.    In numerous instances, Defendants charge consumers without obtaining their express, informed consent.

44.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

45.    Therefore, Defendants' acts or practices as set forth in Paragraph 43 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## COUNT IV

### Unfair Discrimination

### (By Plaintiff FTC Against All Defendants)

46.    In numerous instances, Defendants impose higher costs on Latino consumers than on similarly situated non-Latino White consumers.

47.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

48.     Therefore, Defendants' acts or practices as set forth in Paragraph 46 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF ARIZONA LAW

## COUNT V

### Violations of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534

### (By Plaintiff State of Arizona Against All Defendants)

49.     The State realleges all prior allegations of this Complaint as though fully set forth herein.

50.     The conduct described in the preceding paragraphs of this Complaint constitutes deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of merchandise in violation of A.R.S. §§44-1521 to 44-1534, including:

a.  Defendants engaged in deceptive and unfair acts and practices by refusing to sell vehicles at the price they advertised;

b.  Defendants engaged in deceptive and unfair acts and practices by concealing, suppressing, or omitting the material fact of the true purchase price of vehicles, and did so with the intent that other rely on such concealments, suppressions, or omissions;

c.  Defendants engaged in deceptive and unfair acts and practices by falsely stating that certain add-on accessories were mandatory;

d.  Defendants engaged in deceptive and unfair acts and practices by concealing, suppressing, or omitting the material fact that the purchase of

certain add-on accessories was not required to purchase a vehicle, and
Defendants did so with the intent that others rely on such concealments,
suppressions, or omissions;

    e.  Defendants engaged in unfair acts and practices by charging consumers for
add-ons without obtaining their express, informed consent; and

    f.  Defendants engaged in unfair acts and practices by imposing higher costs
on Latino consumers than on similarly situated non-Latino White
consumers.

51.    While engaging in the acts and practices alleged in this Complaint,
Defendants knew or should have known that their conduct was of the nature prohibited
by A.R.S. § 44-1522, subjecting them to enforcement and penalties as provided in
A.R.S. §44-1531(A).

52.    With respect to all unfair acts and practices described above, these acts and
practices caused or were likely to cause substantial injuries to consumers that were not
reasonably avoidable by consumers and were not outweighed by countervailing benefits
to consumers or to competition.

## VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT AND REGULATION B

53.    Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section
202.4(a) of Regulation B, 12 C.F.R. § 202.4(a), prohibit a creditor from discriminating
against an applicant with respect to any aspect of a credit transaction on the basis of race,
color, religion, national origin, sex, marital status, or age (provided the applicant has the
capacity to contract); because all or part of the applicant's income derives from any
public assistance program; or because the applicant has in good faith exercised any right
under the Consumer Credit Protection Act, 15 U.S.C. Ch. 41.

54.    Defendants are creditors as defined in Section 702(e) of the ECOA, 15
U.S.C. § 1691a(e), and Section 202.2(l) of Regulation B, 12 C.F.R. § 202.2(l).

55.     Section 704(c) of the ECOA, 15 U.S.C. § 1691c(c), specifically empowers the Commission to enforce the ECOA. Defendants' violations of the ECOA are deemed to be violations of the FTC Act and are enforceable as such by the Commission under that Act. Further, the Commission is authorized to use all of its functions and powers under the FTC Act to enforce compliance with the ECOA by any person, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests set by the FTC Act.  This includes the power to enforce a Consumer Financial Protection Bureau regulation promulgated under the ECOA, such as Regulation B, in the same manner as if a violation of that regulation had been a violation of an FTC trade regulation rule.

## COUNT VI

### Discriminatory Financing Practices

### (By Plaintiff FTC Against All Defendants)

56.     In connection with motor vehicle credit transactions, on the basis of race, color, or national origin, Defendants have imposed higher costs, on average, on Latino applicants than on similarly situated non-Latino White applicants.

57.     Defendants' acts, policies, and practices as set forth in Paragraph 56 constitute discrimination against applicants with respect to any aspect of a credit transaction on the basis of race, color, or national origin in violation of Section 701(a)(1) of the ECOA, 15 U.S.C. § 1691(a)(1), and Section 202.4(a) of Regulation B, 12 C.F.R. § 202.4(a).

## CONSUMER INJURY

58.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the ECOA, and the ACFA.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

1

**PRAYER FOR RELIEF**

2    Wherefore, the FTC and the State of Arizona request that the Court:

3    A.    Enter a permanent injunction to prevent future violations of the FTC Act,
4          the ECOA, and the ACFA by Defendants;

5    B.    Enter a permanent injunction prohibiting Defendants from operating as
6          automobile dealers in the Arizona pursuant to A.R.S. § 44-1528(A)(4);

7    C.    Award Plaintiff State of Arizona monetary civil penalties of up to $10,000
8          per violation per violator of the ACFA pursuant to A.R.S. § 44-1531;

9    D.    Award restitution of all money or other property that Defendants may have
10         acquired by means of any practice in violation of the ACFA pursuant to
11         A.R.S. § 44-1528(A)(2);

12   E.    Award Plaintiff State of Arizona all costs and attorney's fees incurred in
13         the prosecution of this action pursuant to A.R.S. § 44-1534;

14   F.    Award monetary and other relief within the Court's power to grant; and

15   G.    Award any additional relief as the Court determines to be just and proper.

16   Dated: August 15, 2024             Respectfully submitted,

17                                      FOR THE FEDERAL TRADE COMMISSION

18
19                                      ____*/s/ Sanya Shahrasbi*_____
                                        Sanya Shahrasbi
20                                      Brian Berggren
                                        FEDERAL TRADE COMMISSION
21                                      600 Pennsylvania Avenue NW
                                        Washington, D.C. 20580
22                                      Telephone: (202) 326-2709
                                        Email: sshahrasbi@ftc.gov
23

24                                      *Attorneys for Plaintiff Federal Trade Commission*

25

26

27

28

- 15 -

COMPLAINT

1

2

KRISTIN K. MAYES
Attorney General

3

_/s/ Alyse Meislik_

4

Alyse Meislik
Heather Hamel

5

Mitchell Allee
Assistant Attorneys General

6

ARIZONA ATTORNEY GENERAL'S OFFICE

7

2005 North Central Avenue
Phoenix, AZ 85004

8

Telephone: (602) 542-3725
Email: Consumer@azag.gov

9

10

_Attorneys for Plaintiff State of Arizona_

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT